[No. B028446. Second Dist., Div. Four. Dec. 15, 1987.]

SDR CO., INC., Plaintiff and Appellant, v.
FEDERAL INSURANCE COMPANY et al., Defendants and
Respondents.

COUNSEL

Stanton & Ballsun, Paul L. Stanton and Suzanne Rosentswieg for Plaintiff and Appellant.

Waters, McCluskey & Boehle and Fritz B. Hax for Defendants and Respondents.

OPINION

McCLOSKY, J.—This is an appeal by plaintiff SDR Co., Inc. (SDR) from a judgment in favor of Federal Insurance Company (Federal) and Arroyo Sales (Arroyo) and against SDR.

The sole issue on appeal is the interpretation of an insurance contract clause contained in a "vendor's endorsement" and its effect. The action was tried to the court without a jury on a joint stipulation of facts.

### CONTENTIONS

Plaintiff contends that (1) the vendor's endorsement is ambiguous or illusory and must be construed against Federal, and (2) the vendor's endorsement should be interpreted to provide SDR with coverage for the Brtek claim.

### FACTS

SDR sold a bottled liquid drain cleaner which was bottled sulfuric acid. SDR bought the empty plastic bottles from Arroyo preprinted at SDR's

request and instruction, with the Clear-All name and warning on them. SDR filled those bottles with sulfuric acid and sold them to the public as Clear-All.

The label Arroyo had printed on the SDR bottles contained a warning that Clear-All consisted of sulfuric acid; that it was dangerous and liable to erupt if not properly used; and that it could cause physical injury and burns if not properly used.

At SDR's request Arroyo agreed to try and help get insurance for SDR, and contacted its insurance agent who added SDR as an additional insured to Arroyo's product liability policy issued by Federal, under a standard form used throughout the insurance industry known as a "vendor's limited form endorsement" (vendor's endorsement) for which Arroyo paid Federal a flat premium of $25. The vendor's endorsement provides in pertinent part:

"The 'WHO IS INSURED' provision is amended to include any person or organization designated below (herein referred to as 'vendor') [SDR], as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's [Arroyo's] products designated below [fn. omitted] subject to the following additional provisions:

"1. The insurance with respect to the vendor *does not apply* to:

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"  b. bodily injury or property damage arising out of

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(iv) products which after distribution or sale by the named insured have been labeled or relabeled or *used as a container* [emphasis added], part or ingredient of any other thing or substance by or for the vendor; . . ." (Original italics.)

On July 12, 1980, while that policy and endorsement was in force, one Ms. Leslie Brtek was injured when a bottle of Clear-All, which she had purchased and which she was pouring into a clogged sink, erupted splattering her with sulfuric acid and seriously burning her. She filed suit for her injuries, against Arroyo, SDR and others, contending that the Clear-All labeling was confusing and unclear and that Clear-All was dangerous when used according to the printed instructions on the label.

Federal provided Arroyo with a defense and indemnified Arroyo for its portion of the Brtek case which case was settled for a total of $250,000. Federal initially refused SDR's demand that Federal defend and indemnify it in the Brtek action but subsequently paid for SDR's defense while still refusing to indemnify SDR for its $40,000 portion of the Brtek settlement.

Federal based its refusal on its contention that the exclusion in the vendor's endorsement set forth above excluded coverage for the Brtek accident.

While the policy was in effect, Josephine Munoz and Alfonso Diaz were injured in separate incidents while using Clear-All and both contended that their injuries were caused by defective bottles, and in Diaz's case additionally by packaging materials. SDR demanded that Federal defend and indemnify it in the suits both Diaz and Munoz filed. Initially Federal refused but after SDR commenced this action for indemnity for the Brtek, Munoz and Diaz claims, Federal agreed to pay for the defense of the Munoz and Diaz actions and to indemnify it for the amounts it paid to settle those two claims.

SDR went to trial seeking the recovery of the $40,000 it paid Ms. Brtek, plus interest.

## DISCUSSION

Plaintiff's first contention is that the vendor's endorsement is ambiguous or illusory and must be construed against Federal. The language of the endorsement appears to be clear and unambiguous. In the most unambiguous terms it makes clear that the insurance afforded with respect to the vendor, SDR, does not apply to products which after sale by the named insured, Arroyo, have been "used as a container." Such a reading of the endorsement language would clearly result in no coverage for the bottles sold by Arroyo were "used as containers" by SDR for the purpose of holding sulfuric acid. Thus, were the endorsement construed literally, it would afford no coverage to SDR.

*Sears, Roebuck and Co.* v. *Reliance Ins. Co.* (7th Cir. 1981) 654 F.2d 494, was a case where there was a vendor's endorsement which used language identical to that here involved. By its literal terms that endorsement too purported to exclude coverage for " 'products which after distribution or sale by the named insured have been labeled or relabeled . . . by or for the vendor.' " (*Id.,* at p. 496.) Riegel, the named insured, sold fabric to Sears, the vendor, to be made into slacks bearing the Sears label. At page 498 of its opinion the *Sears* court stated: "Riegel sold the fabric to Sears to become slacks with the Sears' label. If the mere labeling . . . of the finished slacks

could defeat coverage of any defect in the fabric itself, then the vendor's insurance covering Sears could not have been worth the piece of paper on which it was printed. The vendor's endorsement would become a nullity." And, on page 499 it stated: "The law cannot countenance such illusory 'coverage'." The *Sears Roebuck* case was cited and followed in the recent case of *Oliver Machinery Co.* v. *United States Fid. & Guar. Co.* (1986) 187 Cal.App.3d 1510 [232 Cal.Rptr. 691].

As the trial court and the *Sears* court recognized, the law does not countenance such a nullity, for to do so would disappoint the reasonable expectations of the insured, violate the general rules of construing insurance contracts and most particularly exclusions, in favor of the insured. (*Sears, Roebuck and Co.* v. *Reliance Ins. Co., supra,* 654 F.2d at p. 499.)

Some coverage was thus clearly afforded by the vendor's endorsement. The more pertinent question is how far that coverage extends. Plaintiff contends that the endorsement should be interpreted to provide SDR with coverage for the Brtek claim.

In the two suits of Diaz and Munoz filed against Clear-All there was a claim of a defect in the bottles sold by Arroyo to SDR and in which the sulfuric acid was contained. Federal belatedly but properly recognized that it had a duty to not only defend but also to indemnify SDR for those claims as there was a nexus between the defective bottle and the injury.

The trial court posed the question and answer in its statement of decision: "Should the coverage under the endorsement extend to a cause such as the Brtek case where the claimed defect is not in the bottle but in the contents and the directions for use (printed on the bottles at SDR's instruction)?

"The cases previously cited (*Sears Roebuck* v. *Aguirrez*) suggest a solution.

"At page 499, the *Sears Roebuck* court says:

"'This court must assume that Commercial (the insurance carrier) intended to insure Sears under the vendor's endorsement of its policy unless there is a *nexus* between changes made by Sears and the injuries.' (Emphasis added.)

"In the present case, there is a nexus, or link, between the injuries claimed by Mrs. Brtek and the claimed dangerous sulfuric acid sold by SDR as Clear-All, and the claimed insufficient instructions on the bottle made up by SDR. As to SDR, the Brtek claim is not based on a defective bottle, but

is based on a defective product in the bottle or defective directions. Thus, the Brtek case differs from the Munoz and Diaz cases.

"As suggested in the *Sears Roebuck* case, it would be unfair to hold a manufacturer (here ARROYO) for injuries arising out of changes made after the product left the manufacturer's control.

"The same reasoning applies to the coverage of the endorsement. The endorsement is intended to protect the vendor (SDR) against liability which the vendor may incur because of a defect in the product sold to the vendor by the named insured (ARROYO). The endorsement is not intended to cover the vendor for changes in the product made by the vendor over which ARROYO has no control.

"Here there is a *nexus* between the injuries to Mrs. Brtek and the sulfuric acid sold by SDR. There is no *nexus* between the injuries and the empty bottle as delivered by ARROYO to SDR. The coverage of the endorsement for SDR should not extend to the Brtek claim."

The trial court thus found no defect in the bottle, its label or in Arroyo's printing of SDR's warning on it. We can state the matter no better than did the trial judge in his statement of decision and we adopt the above quoted portion of that statement and incorporate it herein.

In *Sears* and *Oliver* the product that was defective and caused the claimant's injury was the product manufactured by the named insured (which would be the same as Arroyo herein). In the case at bench it was not the bottle which had been distributed by the named insured, Arroyo, that caused Ms. Brtek's injuries, but the sulfuric acid contents that had been put into the bottle by SDR, and that product did not cause Ms. Brtek's injuries until after it left the bottle and was pouring into the clogged sink. The nexus necessary to find coverage under the vendor's endorsement between the named insured's products, the bottle, and Ms. Brtek's injuries was not present. The nexus was, instead, between the sulfuric acid SDR put into the bottle and her injuries.

Plaintiff's argument that it did not need insurance for defective bottles because Arroyo was already covered is meritless. That insurance would benefit Arroyo, not necessarily SDR. Similarly, to imply as does plaintiff that it could reasonably expect coverage for its sulfuric acid product by either the language of the vendor's endorsement or the payment of the $25 premium for it, is without merit. As defendants assert, the commercial purpose behind the vendor's endorsement is the knowledge that the manufacturer's insurer will defend and indemnify the vendor for losses *caused by*

*the manufacturer's product,* not for the contents put in it or additions to it by the vendor.

The judgment is affirmed.

Woods, P. J., and Rothman, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.