21 F.3d 1115
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
REPUBLIC WESTERN INSURANCE COMPANY, dba Oxford Property &
Casualty Insurance Co., Plaintiff-Appellee,
v.
BARTKO, WELSH, TARRANT & MILLER, a California Professional
Corporation, Defendant-Appellant.
 No. 92-16035.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1993.
Decided April 1, 1994.
 
 Before: POOLE, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal concerns the proper construction under California law of a professional liability insurance policy. Bartko, Welsh, Tarrant & Miller, P.C. ("Bartko") challenges the district court's grant of summary judgment to Republic Western Insurance Co., dba Oxford Property & Casualty Insurance Co. ("Oxford"). Bartko contends that the district court erred in concluding that it failed to activate the tail endorsement ("tail") necessary to cover a claim arising after the policy's termination date. Bartko also contends that Oxford's conduct during negotiations for the purchase of the tail constituted a breach of the implied covenant of good faith and fair dealing. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * We review de novo grants of summary judgment. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We review de novo principles of contract interpretation as applied to the facts. Aetna Casualty and Surety Co. v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991).
 
 II
 
 4
 Bartko contends that the district court's construction of the insurance contract was contrary to California law. Specifically, it argues that the district court construed p 2 of the tail in isolation from p 3, which, it contends, negated the voiding provision in p 2. Interpreting the policy differently, Bartko argues that it reasonably expected a right to purchase the tail as either primary or excess insurance, inevitably excess if Oxford refused to authorize the tail as primary. Bartko supports its construction by maintaining that a contrary construction would render Oxford's promise of extended coverage illusory and defeat the purpose of the insurance.
 
 
 5
 Under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, reasonably practicable, each clause helping to interpret the other." Cal.Civ.Code Sec. 1641; Bank of the West v. Superior Court, 2 Cal.4th 1254, 1264-65 (1992). When there are several provisions of a contract, such a construction is, if possible, to be adopted as will give effect to all. Medical Operations Management, Inc. v. National Health Laboratories, 176 Cal.App.3d 886, 893 (1986). However, the law does not allow an interpretation which creates "a nullity, for to do so would disappoint the reasonable expectations of the insured ... [and] violate the general rule[ ] of construing insurance contracts ... in favor of the insured." SDR Co. v. Federal Ins. Co., 196 Cal.App.3d 1433, 1437 (1987).
 
 
 6
 Bartko's argument is without merit. p 2 clearly and conspicuously provides that the tail becomes null and void when another policy provides coverage beginning on or after the termination date of Oxford's policy, regardless of whether the other policy is primary, excess or otherwise. The tail was thus rendered inactive when Bartko purchased the Home policy without Oxford's authorization.
 
 
 7
 Contrary to its assertion that the district court misconstrued California law, Bartko's proposed construction would violate the principles stated in Bank of the West and Medical Operations Management. Its construction would have failed to give effect to every clause and rendered most of p 2 superfluous.
 
 
 8
 Considering the contract as a whole in order to give effect to all of its provisions, we conclude that the tail is amenable to a single construction. The single exception to the voiding provision in p 2 concerns policies which were written, with Oxford's authorization, as specific excess insurance to Oxford's pre-termination date policy. p 3 is a standard "other insurance clause" designed to govern conflicts between the insurance provided by the tail and the already-authorized excess policy. The phrase "[n]otwithstanding the above" in p 3 refers to the character of the competing policies, as the paragraph's purpose is to shift the primary obligation from the tail to the previously-purchased excess insurance carrier.
 
 
 9
 Bartko's contention that this construction creates illusory coverage is without foundation. The tail serves a reasonable commercial purpose, to wit, extending the period of coverage until the insured has the opportunity to purchase another policy. Cf. SDR Co. v. Federal Ins. Co., 196 Cal.App.3d at 1438. There is no evidence that Oxford misrepresented the terms of the tail when Bartko purchased the policy. Rather, the policy referenced the 41 CW endorsement, putting Bartko on inquiry regarding its scope and utility. Because Bartko did not have its particular needs met or receive the exact coverage it desired does not mean Oxford's promise was illusory.
 
 III
 
 10
 Bartko also contends that the tail was ambiguous and consequently required a construction that protected the objectively reasonable expectations of the insured. Bank of the West v. Superior Court, 2 Cal.4th at 1264-65.
 
 
 11
 "A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." Producers Dairy Delivery Co., Inc. v. Sentry Insurance Co., 41 Cal.3d 903, 912 (1986). However, "[w]hen a noncoverage clause appears in clear and conspicuous terms in the policy, it must be given effect," Chamberlin v. Smith, 72 Cal.App.3d 835, 850 (1977), even if the reader did not understand the provision. Sarchett v. Blue Shield of California, 43 Cal.3d 1, 14-15 (1987).
 
 
 12
 Both bases of Bartko's argument lack merit. The tail cannot support two reasonable constructions. Even if the phrase "notwithstanding the above" introduced an element of ambiguity, Bartko's expectations were not objectively reasonable. In addition to the conspicuous voiding language in p 2, the policy contained an "other insurance clause" as a condition precedent to prior acts coverage. Bartko was thus on notice that p 3 was designed to clarify the relationship between insurers and not between the insurer and its insured.
 
 IV
 
 13
 Bartko contends that Oxford breached the covenant of good faith and fair dealing by refusing to authorize the tail or to schedule the Home policy as primary insurance. Additionally, Bartko argues that Oxford breached the implied covenant by "stonewalling" with dilatory inquiries during negotiations over the purchase of the tail.
 
 
 14
 The implied covenant of good faith and fair dealing is recognized generally under California law and in the insurance context in particular. Comunale v. Trader & General Ins. Co., 50 Cal.2d 654, 658 (1958). When one party to a contract retains the discretionary power to affect the rights of another party, it must exercise its discretion in compliance with good faith and fair dealing. Kendall v. Ernest Pestana, Inc., 40 Cal.3d 488 (1985). Absent special circumstances, however, there is no obligation in California to bargain in good faith for a new or amended contract. Racine & Laramie, Ltd. v. Department of Parks & Recreation, 11 Cal.App.4th 1026, 1035 (1992).
 
 
 15
 Bartko's argument lacks merit. Although the policy's table of contents referred to the insured's "right" to extended coverage, paragraph G expressly referenced the 41 CW endorsement and described available endorsements as "amendments ... available for purchase." As this language suggests, the question whether Oxford was required to comply with any good faith covenant is governed by cases involving modifications.
 
 
 16
 Racine & Laramie, Ltd. v. Department of Parks & Recreation is controlling. There, the Department's sudden, arbitrary-seeming reversal in its negotiating stance over a modification to an existing concession contract did not constitute a breach of the implied covenant because nothing in the underlying agreement obligated the parties to bargain for a modification. 11 Cal.App.4th 1026, 1031 (1992); accord Los Angeles Equestrian Center, Inc. v. Los Angeles, 17 Cal.App.4th 432, 446 (1993). This was true even if the jury found the Department's conduct unreasonable or unfair. Id. Because Bartko produced no evidence that Oxford agreed to alter the tail or was otherwise obligated to do so, we conclude that Oxford was within its rights to refuse to authorize a modification of the policy, even arbitrarily.
 
 
 17
 Bartko's contention that Oxford found advantage in dilatory tactics does not withstand scrutiny. Bartko does not specify what Oxford stood to gain by "stonewalling." The relevant correspondence demonstrates that Oxford and its underwriter dealt forthrightly with Bartko's request to alter the tail, briefly considered revising the tail to accommodate Bartko's needs, but finally decided to stand on the terms of the tail as drafted.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3